UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEPHEN CIBER



Case No. 13-cv-7188

Plaintiff,

vs.                                                         FIRST AMENDED COMPLAINT

BREW WEWORK JV LCC d/b/a BREW and
also d/b/a BREW CAFÉ, WEWORK
COMPANIES LLC, WEWORK
COMPANIES INC., WEWORK 175
HOLDINGS LLC, JASON W. WELLS,
individually, BEN PHILLIPS, individually,
and JOHN DOES 1-10, and ABC CORPS. 1-
10, fictitious names for persons or entities
whose present roles and identities are
unknown,

Defendants.

---

Plaintiff, STEPHEN CIBER, by and through his attorneys, Meyers Fried-Grodin, LLP, as and for a Complaint, states as follows:

### STATEMENT OF THE CASE

1. This is an action, by aggrieved individuals against their former employer, alleging violations of federal and state law, for: (i) failure to properly pay wages, including but not limited to a failure to pay overtime; and (ii) retaliation for having engaged in legally protected activity which included objecting to Defendants' wage and hour violations.

### THE PARTIES

2. Plaintiff Stephen Ciber ("Plaintiff" or "Mr. Ciber") is an individual who resides in Brooklyn, New York, in the County of Kings.

- 1 -

3. Between on or about April 21, 2012 and April 23, 2013, Mr. Ciber was employed by Brew Wework JV LCC d/b/a Brew and also d/b/a Brew Café (collectively, "the Defendant companies").

4. Upon information and belief, Brew maintains a principal place of business at 154 Grand Street, New York, NY 10013, in the County of New York.

5. Brew operates at café at 154 Grand Street and is also in the business of delivering food, beverages, dry goods, and related products to office buildings.

6. Upon information and belief, Brew maintains a principal place of business at 175 154 Grand Street, New York, NY 10013, in the County of New York.

7. Upon information and belief, Wework 175 Holdings, LLC maintains a principal place of business at 175 Varick Street, New York, NY 10017, in the County of New York.

8. Upon information and belief, Wework Companies, LLC maintains a principal place of business at 175 Varick Street, New York, NY 10017, in the County of New York.

9. Upon information and belief, Wework Companies Inc. is an affiliate of Wework Companies, LLC or is otherwise part of an enterprise with Wework Companies, LLC.

10. Upon information and belief, Defendant Ben Phillips ("Mr. Phillips") is the Chief Operating Officer of Brew.

11. Upon information and belief, Defendant Jason W. Wells ("Mr. Wells") is the owner of Brew.

12. Upon information and belief, at all relevant times, Mr. Phillips has and does reside in England, but frequently travels to the State of New York, in New York City, in Manhattan (New York County) to manage the Defendant companies.

13. Upon information and belief, at all relevant times, Mr. Wells has and does reside in England.

14. At all relevant times, Messrs. Phillips and Wells exercised close control over the managerial operations of the Defendant companies, including policies and practices concerning employees, determining whether employees were exempt from overtime laws, wages, compensation, and payroll.

15. Upon information and belief, at all relevant times, Messrs. Phillips and Wells controlled the terms and conditions of employment, supervised employees, made decisions as to hiring and firing, and as to determining the rate and method of the payment of wages with respect to Plaintiff.

16. At all relevant times, Defendants were engaged in an industry having an effect on commerce within the meaning of 29 U.S.C. § 203.

17. Upon information and belief, at all relevant times, Messrs. Phillips and Wells were principals, officers, owners, members, managers and/or director of the Defendant companies.

18. Upon information and belief, at all relevant times, the Defendant companies were alter egos of one another.

19. Upon information and belief, at all relevant times, the Defendant companies were and are alter egos of Messrs. Phillips and Wells.

20. Upon information and belief, at all relevant times, substantially all of the business operations of the Defendant companies were related activities performed through unified operation and/or common control by Messrs. Phillips and Wells for a common business purpose.

21. At all relevant times, the Defendant companies were and are an enterprise engaged in commerce.

22. At all relevant times, Plaintiff regularly handled and worked on goods that were produced and were intended for shipment in interstate commerce and international commerce.

23. Upon information and belief, for each of the calendar years of 2011 to 2013, inclusive, the gross receipts of the Defendant companies were not less than $500,000.

24. Upon information and belief, at all relevant times, the Defendant companies had more than twenty (20) employees.

25. At all relevant times, Defendants Messrs. Wells and Phillips acted as the employer of Plaintiff within the meaning of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

## JURISDICTION AND VENUE

26. Jurisdiction is based on 28 U.S.C. § 1331, insofar as this action involves statutes of the United States, and specifically the FLSA, 29 U.S.C. §§ 201 *et. seq.*

27. Additionally, Plaintiff relies upon 28 U.S.C. § 1367 to invoke supplemental jurisdiction with respect to state law claims that form other bases for recovery upon the same factual nexus, specifically the NYLL.

28. Moreover, this Court has the authority to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

29. Venue is based on 28 U.S.C. § 1391(b)(1) insofar as at least one of the Defendants resides within this Judicial District, and (b)(2) insofar as a substantial part of the events giving rise to the within causes of action occurred in this Judicial District.

## FACTS COMMON TO ALL COUNTS

30. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 29, above.

A. **Plaintiff's Non-Exempt Work for Defendants**

31. At all relevant times, Plaintiff's worked for Defendants' restaurant business – a business that provides products for clients in the State of New York, and across state borders by, *inter alia*: (i) transmitting its advertising media all across the world, via the internet; and (ii) sending, or causing to be sent, in inter-state commerce, food and beverage products, dry goods, and materials associated with those goods and products, across multiple states in the United States.

32. Mr. Ciber was hired for a position that he believed to be "Production Manager" for the Defendants' business.

33. Despite the word "manager" in the title, Mr. Ciber primarily performed duties that are not exempt from overtime or minimum wage requirements of state or federal law and his duties did not entail the exercise of independent judgment or discretion.

34. The actual duties he performed primarily consisted of:

- preparing sandwiches, breakfast items, salads, cakes, and cookies;
- ordering ingredients and supplies;
- accepting delivery of ingredients, supplies and other deliveries (which involved carrying deliveries down two flights of stairs to the kitchen and storage area and climbing those same stairs again to deliver finished food items to the café for sale);
- storing of items used in the kitchen and café;
- maintaining and cleaning equipment in the kitchen and storage area as well as washed utensils, pots and pans;
- cleaning and mopping floors;
- maintaining and rotating inventory, kitchen and storage;
- manually weighing and counting all ingredients and supplies on a weekly basis for inventory control.

B. **Defendants' Failure to Pay Plaintiff Overtime**

35. Plaintiff was required to work in excess of 40 hours per week.

36. There were weeks in which Plaintiff was not paid an overtime premium of time and a half for work that he performed in excess of 40 hours per week. Plaintiff estimates that he worked the following hours during the following weeks and was not paid time and a half for the hours that he worked over 40 per week (and Plaintiff instead only was paid on a straight salary basis):

| WEEK STARTING | NUMBER of HOURS WORKED |
| --- | --- |
| 4/23/2012 | 45 |
| 4/30/2012 | 48 |
| 5/7/2012 | 56 |
| 5/14/2012 | 55 |
| 5/21/2012 | 56 |
| 5/28/2012 | 58 |
| 6/4/2012 | 57 |
| 6/11/2012 | 61 |
| 6/18/2012 | 60 |
| 6/25/2012 | 60 |
| 7/2/2012 | 63 |
| 7/9/2012 | 65 |
| 7/16/2012 | 63 |
| 7/23/2012 | 92 |
| 7/30/2012 | 45 |
| 8/6/2012 | 68 |
| 8/13/2012 | 68 |
| 8/20/2012 | 62 |
| 8/27/2012 | 62 |
| 9/3/2102 | 60 |
| 9/10/2012 | 58 |
| 9/17/2012 | 70 |
| 9/24/2102 | 57 |
| 10/1/2012 | 55 |
| 10/8/2012 | 55 |
| 10/15/2012 | 54 |
| 22-Oct | 57 |
| 10/29/2012 | 19 |

| Date | Hours |
|---|---|
| 11/5/2012 | 64 |
| 11/12/2012 | 45 |
| 11/19/2012 | 48 |
| 11/26/2012 | 46 |
| 12/3/2012 | 60 |
| 12/10/2012 | 58 |
| 12/17/2012 | 55 |
| 12/24/2012 | 49 |
| 12/31/2012 | 49 |
| 1/7/2013 | 68 |
| 1/14/2013 | 72 |
| 1/21/2013 | 70 |
| 1/28/2013 | 70 |
| 2/4/2013 | 71 |
| 2/11/2013 | 66 |
| 2/18/2013 | 62 |
| 2/25/2013 | 60 |
| 3/4/2013 | 55 |
| 3/11/2013 | 55 |
| 3/15/2013 | 54 |
| 3/25/2013 | 52 |
| 4/1/2013 | 52 |
| 4/8/2013 | 27 |
| 4/15/2013 | 0 |
| 4/22/2013 | 18 |

37. There were a number of weeks, during the above timeframe in which Plaintiff was not paid anything at all.

38. Instead, Plaintiff was paid late for some weeks and on approximately two occasions, Plaintiff's paycheck bounced, causing him to incur bank fees, and causing him to receive his payment late..

39. Defendants did not furnish to Plaintiff, annual written notices setting forth: (i) rate or rates of pay; (ii) how the employee is paid (*e.g.* by the hour, shift, day, week, commission, etc.); (iii) regular payday; (iv) the official name of the employer and any other names used for

- 7 -

business; (v) address and phone number of the employer's main office or principal location; and (vi) allowances takes as part of the minimum wage, as required by the New York Wage Theft Prevention Act, Section 195 of the NYLL.

40. Moreover, Defendants did not furnish to Plaintiff other notifications, in the form of postings or otherwise, regarding overtime and wages as required by the FLSA and NYLL.

41. Plaintiff noticed that Defendants engaged in questionable wage and hour practices. For example:

- For a period of several months, employees were routinely paid late;

- On approximately two occasions, Plaintiff's paychecks bounced (and he was never reimbursed by Defendants for the bounce fees he incurred);

- One employee refused to come to work anymore because of not being paid on time and because his paycheck or paychecks had bounced, and Defendants responded by terminating the employment relationship. Instead of trying to work with the employee, Owner Jason Wells explained that he would not be held "hostage" by any employee;

- In or about August 2012, employees stopped receiving their pay from a traditional payroll company. Instead, Defendants began issuing company-issued checks. Defendants failed to provide W-2 forms to certain employees for 2012. After a complaint was made to Defendants in early 2013, W-2 forms were finally issued. However, many of the W-2 forms were improper because they did not reflect pay that was made through company-issued checks. Plaintiff's W-2 suffered from this problem. Plaintiff complained to COO Ben Phillips about this problem and Phillips said he would correct it. However, the problem was not corrected.

### C. Defendants Retaliated Against Plaintiff After He Objected to Wage & Hour Violations

42. On or about March 21, 2013, Plaintiff attempted to have a Skype video conference with COO Ben Phillips about the Defendants' failure to provide a proper W-2 for Plaintiff for 2012.

43. As Plaintiff attempted to establish the Skype conference, owner Jason Wells came into the café where Plaintiff was.

44. Wells' reaction was to tell Plaintiff that he was trouble and to terminate him, and give him 4 weeks' notice and pay a bonus payment of some kind to Plaintiff.

45. The next morning, March 23, 2013, John Martinez (a consultant) came into the kitchen and told Plaintiff that he (Martinez) had spoke to Wells and that Wells wanted him (Marintez) to tell Plaintiff that Plaintiff was not going to be fired, but only issued a "warning" not to be a trouble maker.

46. Later that day, an ad appeared on Craigslist for a replacement for Plaintiff.

47. In or about the following week, COO Ben Phillips arrived in New York, from England, and assured Plaintiff that Wells was just a "hothead" and that Plaintiff should ignore Wells' outburst. COO Phillips said that Plaintiff was part of the Brew "family" and would be there for a long time.

48. On April 15, 2013, Plaintiff sent an e-mail to owner Jason Wells and COO Ben Phillips complaining about Defendants' failure to pay overtime and requesting that the unpaid overtime be paid by stating "This e-mail is to inform you that I believe that I should be paid overtime, 1 ½ times regular pay, for the hours worked over 40 per week. This is in accordance with the Fair Labor Standards Act."

49. Soon thereafter, on or about April 23, 2013, Plaintiff was fired from his job.

50. It was manifestly clear that Plaintiff was fired due to his complaint about unpaid overtime because of (i) the timing of my discharge, following right after my complaint about not receiving overtime pay; and (ii) management's history of responding negatively to a complaint about a payroll issue.

51. A Moreover, the temporal proximity between Plaintiff's complaint and his termination reflects a causal relationship.

52. Additionally, at the time Plaintiff was fired, Defendants had not paid him for: (i) the week of April 15 to 21, 2013; nor for (iii) unused vacation time for which Plaintiff was entitled to be paid (*i.e.* 4 weeks' vacation pay and 6 paid holidays). Defendants continue to withhold payment for these.

## COUNT ONE
### (FLSA Failure to Pay Minimum Wage and Failure to Pay Wages)

53. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 52, above.

54. In violation of the FLSA, the Defendants failed to pay Plaintiff anything at all for certain time periods.

55. In addition to Plaintiff not receiving any payment at all, he also did not receive minimum wage.

56. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

57. All of the foregoing constituted willful and repeated violations.

## COUNT TWO
### (NYLL Failure to Pay Minimum Wage and Failure to Pay Wages)

58. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 57, above.

59. In violation of the NYLL, the Defendants failed to pay Plaintiff anything at all for certain time periods.

60. In addition to Plaintiff not receiving any payment at all, he also did not receive minimum wage.

61. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

62. All of the foregoing constituted willful and repeated violations.

## COUNT THREE
### (New York Unpaid Wages Prohibition Act)

63. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 62, above.

64. In violation of the NYLL, the Defendants failed to pay Plaintiff any pay at all for certain time periods.

65. This represents a violation of NYLL § 196-a, the New York Unpaid Wages Prohibition Act.

66. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

67. All of the foregoing constituted willful and repeated violations.

## COUNT FOUR
### (New York Wage Theft Prevention Act)

68. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 67, above.

69. Defendants failed to provide notices as required by the New York Wage Theft Prevention Act.

70. The Act provides for a private cause of action and remedy of money damages.

## COUNT FIVE
### (FLSA Failure to Pay Overtime)

71. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 70, above.

72. Defendants, in violated 29 U.S.C. §§ 207, 216(b) by failing to pay Plaintiff an overtime premium of one and a half times the regular pay for time that he worked in excess of 40 hours per week.

73. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

74. All of the foregoing constituted willful and repeated violations, therefore the applicable statute of limitations is three (3) years, pursuant to 29 U.S.C. § 255(a).

## COUNT SIX
### (NYLL Failure to Pay Overtime)

75. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 74, above.

76. Defendants violated Articles 6 and 19 of the NYLL by failing to pay Plaintiff an overtime premium of one and a half times the regular pay for time that he worked in excess of 40 hours per week.

77. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

78. All of the foregoing constituted willful and repeated violations.

## COUNT SEVEN
### (NYLL Spread of Hours and Split-Shift Pay)

79. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 78, above.

80. Defendants violated Articles 6 and 19 of the NYLL, and more particularly 12 NYCRR § 142-2.4 by failing to pay Plaintiff one hour's pay at the prevailing minimum wage rate for each day during which there was a split shift and/or the spread of hours exceeding 10 hours. Plaintiff estimates that he worked for more than 10 hours on the following days, but did not receive an hour's pay at minimum wage on approximately twenty separate occasions during the weeks of 6/11/2012 (worked for more than 10 hours during approximately 1 day this week); 6/18/2012 (worked for more than 10 hours during approximately 1 day this week); 6/25/2012 (worked for more than 10 hours during approximately 1 day this week); 7/2/2012 (worked for more than 10 hours during approximately 1 day this week); 7/9/2012 (worked for more than 10 hours during approximately 1 day this week); 7/23/2012 (worked for more than 10 hours during approximately 5 days this week); 9/17/2012 (worked for more than 10 hours during approximately 3 days this week); 11/5/2012 (worked for more than 10 hours during approximately 1 day this week); 1/7/2012 (worked for more than 10 hours during approximately 1 day this week); 1/14/2013 (worked for more than 10 hours during approximately 2 days this week); 1/21/2013 (worked for more than 10 hours during approximately 1 day this week); 1/28/2013 (worked for more than 10 hours during approximately 1 day this week); 2/4/2013 (worked for more than 10 hours during approximately 1 day this week).

81. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

82. All of the foregoing constituted willful and repeated violations.

## COUNT EIGHT
### (FLSA Retaliation)

83. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 82, above.

84. Plaintiff engaged in legally protected activity by lodging an internal complaint about wage and hour violations to Defendants.

85. Defendants knew about Plaintiff's legally protected activity and retaliated against Plaintiff by, *inter alia*, terminating Plaintiff's employment.

86. Plaintiff has been harmed as a result of Defendants' actions.

87. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

## COUNT NINE
### (NYLL Retaliation)

88. Plaintiff re-alleges and incorporate the allegations set forth in paragraphs 1 through 87, above.

89. Plaintiff engaged in legally protected activity by lodging an internal complaint about wage and hour violations to Defendants.

90. Defendants knew about Plaintiff's legally protected activity and retaliated against Plaintiff by, *inter alia*, terminating Plaintiff's employment.

91. Defendants' actions violated the NYLL (New York Labor Law § 215 *et seq.*)

92. Plaintiff has been harmed as a result of Defendants' actions.

93. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

## COUNT TEN
### (Respondeat Superior)

94. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 93, above.

95. The Defendant companies are liable for any and all damages incurred as a result of the actions and/or omissions of the individual defendants and/or other individuals who engaged in unlawful conduct pursuant to the doctrine of respondeat superior.

## COUNT TEN
### (Individual Liability)

96. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 95, above.

97. Due to, *inter alia*, the control, involvement, and ownership interests of the individual defendants, Wells and Phillips, they are individually liable for wage and hour violations under the FLSA and NYLL.

## COUNT FIVE
### (Fictitious Party Allegations)

98. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 97, above.

99. Defendants John Does 1-10 and ABC Corps 1-10 are fictitious individuals, corporations, partnerships, business entities, or anyone else who participated with the treatment, management, and supervision of Plaintiff at all relevant times; and/or those with an ownership interest in the Defendant companies, and/or who possessed the requisite position such as to be individually liable for violations of the wage and hour provisions of the FLSA and/or NYLL.

## PRAYER

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for the following:

    a.    compensatory damages including back-pay, front-pay, and emotional distress in an amount no less than $5,000,000;

    b.    pursuant to the FLSA's statutory and regulatory scheme, an award of unpaid wages, unpaid overtime pay, unpaid minimum wages, and an additional equal amount in liquidated damages;

    c.    an Order from this Court, pursuant to FLSA § 217, enjoining Defendants from further violating the FLSA;

    d.    an Order from this Court declaring that the Defendants' violation of the FLSA's minimum wage and overtime provisions was knowing and willful;

    e.    pursuant to the NYLL's statutory and regulatory scheme, an award of unpaid wages, unpaid minimum wages, overtime pay, liquidated damages, and spread of hours pay;

    f.    pursuant to the New York Unpaid Wages Prohibition Act, that this Court award liquidated damages in the amount of 200 percent of unpaid wages;

    g.    That damages be awarded pursuant to the New York Wage Theft Prevention Act;

    h.    an Order from this Court, pursuant to the NYLL, enjoining Defendants from further violating applicable State wage and hour laws;

    i.    pre-judgment and post-judgment interest;

    j.    attorneys' fees and costs;

  k.  punitive damages;

  l.  reinstatement; and

  m.  such other and further relief as the Court finds just and proper.

  Respectfully submitted,

**MEYERS FRIED-GRODIN LLP**
Attorneys for Plaintiff Stephen Ciber

By: _____

Dated: November 15, 2013

Jonathan Meyers, Esq.
Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10018
(646) 596-1292
JMeyers@MfgLegal.com

TO:

BREW WEWORK JV LCC d/b/a BREW and also d/b/a BREW CAFÉ
154 Grand Street
New York, NY
10013

WEWORK COMPANIES LLC
175 Varick Street
New York, NY
10017

WEWORK COMPANIES INC.
222 Broadway 10th Floor
New York, NY
10038

WEWORK 175 HOLDINGS LLC
175 Varick Street
New York, NY
10017

JASON W. WELLS
154 Grand Street
New York, NY
10013

BEN PHILLIPS
154 Grand Street
New York, NY
10013